Jack **GOODING** et ux., Appellants,

v.

**SULPHUR SPRINGS COUNTRY CLUB,**
**Appellee.**

No. 340.

Court of Civil Appeals of Texas.

Tyler.

Dec. 14, 1967.

Rehearing Denied Jan. 11, 1968.

L. F. Sanders, Canton, for appellants.

Ramey, Ramey & Neal, Jack G. Neal, Sulphur Springs, for appellee.

DUNAGAN, Chief Justice.

This is an appeal from an order denying a temporary injunction. The appellants instituted this suit in the District Court of Hopkins County on March 27, 1967, seeking a temporary restraining order restraining the appellee from, in essence, interfering with appellants' use of the road running from Interstate Highway No. 30 through land owned by appellee, which adjoins the land owned by the appellants, and further asked in said petition that upon final hearing the appellants have a permanent and perpetual injunction against the appellee. The appellants alleged in their pleadings that the road in question was a public road and in the alternative alleged that if such road was not a public road, then they had obtained an easement by prescription.

The trial court granted the appellants' temporary restraining order without notice and without hearing. After a full hearing, the court on September 7, 1967, refused a temporary injunction. From said judgment, the appellants have perfected their appeal to this court.

The case was tried to the court without a jury. No findings of fact or conclusions of law were filed and none requested.

This controversy involves a road which runs from Interstate Highway No. 30 through property belonging to appellee to the property which belongs to the appellants. The appellee, by letter dated September 27, 1966 advised appellants that the road in question would be closed April 1, 1967. The appellants contend that the appellee does not have the right to close this road in that the appellants have obtained an easement thereon by prescription or that the road had been dedicated to the public in general and consequently the trial court committed error in its refusal to grant to the appellants the temporary injunction as prayed for.

Mr. Ward Gober was called as a witness on behalf of appellee and he testified that he had lived in Sulphur Springs since 1913 and was a charter member of the Sulphur Springs Country Club, the appellee herein. The witness further testified that the strip of land running from Interstate Highway No. 30 up to the proximate location of the appellee's club house was purchased in 1931 or 1933; that at the time this particular strip of land was purchased, there was no road located thereon and it was an open field. Prior to opening the road in question, the witness testified that the route used by members of the Sulphur Springs Country Club was through the property owned by Jess Spencer, lying east of part of the present road in question. The witness also testified that the road in question was built in 1941, with the appellee paying the entire expense for such construction.

Mr. Bill Tyler, who was called as a witness by appellee, testified that he had resided in Sulphur Springs since 1943; that he had been a member of the Sulphur Springs Country Club for about 12 or 14 years and was presently a member; that he had previously owned the property adjoining the property of the appellee, which is

now owned by the appellants, by virtue of a conveyance from him to them on March 9, 1963. He purchased a portion of the property in 1952; that during all the time he owned the property, he used the road in question to get to his property. He further testified that prior to 1958, the road leading directly to the appellants' property was situated north of where the road is now located. He changed the location of the road in 1958. He also testified that at all times when he used the road, he did it with the permission of the appellee; that when he changed the road, he also did this with the permission of the appellee; and that he at no time claimed any ownership in such road. This testimony stands undisputed in the record. There is no contention made that an easement has been created by the way of necessity. Mrs. Gooding, one of the appellants, testified that there was a county road, called the Brinker Road, which ran to the appellants' property. She further testified that since she and her husband had purchased the property, they had never contributed to the expense of repairing and maintaining any part of the road in question. She concluded her testimony on cross-examination by stating that the only person the appellants talked to concerning the road in question at the time they purchased the property was Mr. Bill Tyler and since that time they had talked to no one concerning the use of the road in question until such time they received a letter from the appellee advising them that the road would be closed on April 1, 1967.

The use of the road by the public has at all times been consistent with that of the appellee. The testimony shows that the road was used to haul feed to and milk from the Goodings and their predecessor in title, W. S. Tyler; it was also used by neighbors and relatives of the Goodings. The Sulphur Springs school bus transported the Gooding children to and from school over this road since the Goodings purchased and moved on their property in 1963. Service personnel of the utilities that served the Goodings likewise used the road.

Mrs. Gooding testified that she and her husband talked to W. S. Tyler and someone that she referred to only as Dick at the Country Club about repairing a bridge on this road. In the course of the conversation, she testified that Jack (whom we assume was her husband, Jack Gooding) said: "Well, I'll get someone in there to fix that." (the bridge) and Dick (apparently connected with the Country Club) said: "Well, we'll have to have a meeting before we give permission to do so."

W. E. Miller, who was County Commissioner for that part of Hopkins County from 1951 until 1963, testified that during the time he was County Commissioner, he used county equipment to work oil in on this road. He did not remember how many times. He further testified on direct examination as follows:

"Q What was the custom, if there was one, as to putting oil on the roads at the time you were commissioner?

"A Well, they bought the oil and we worked it in.

"Q Was that a custom that you followed with everybody, with people wanting road oil, you would work it in there, up and down the road, and they furnished the oil and you had the county hands and equipment and worked it.

"A Yes."

The evidence also shows that the county did work on the road and repaired the bridge thereon in 1964 at the Gooding's request. It is not shown that the appellee had any actual knowledge of the Gooding's request or of the repairs being made. Dinwiddie v. American Trading and Production Corporation, 373 S.W.2d 867 (Tex.Civ. App., El Paso, 1964, n. w. h.).

We think it apparent from this record that the appellee constructed the road in question leading from what is now Interstate Highway No. 30 to its property for the use of its members. The evidence is undisputed that Bill Tyler, the predecessor in

title to the Goodings, used the road in question to get to his property with the consent and permission of appellee and without any claim of ownership therein. It is also undisputed that the road over appellee's property used by Mr. Tyler was changed in 1958 and this was likewise with the permission and consent of the appellee.

■■■ It is well settled in this state that a public right-of-way by prescription can be established only by showing an uninterrupted use by the public under an adverse claim of right. The use of lands of another by the public as a roadway, with the acquiescence of the owner, will not ripen into a prescriptive right, no matter what period of time such use may continue, unless the evidence shows that such use was by claim of right adverse to the landowner of which adverse claim the latter has notice. Ladies' Benev. Soc. of Beaumont v. Magnolia Cemetery Co., 288 S.W. 812 (Tex.Com.App., 1926); Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622; Schultz v. Shatto, 150 Tex. 130, 237 S.W.2d 609; O'Connor v. Gragg, 161 Tex. 273, 339 S.W.2d 878; Miller v. Pellizzari, 342 S.W.2d 48 (Tex.Civ.App., 1960, Eastland, n. w. h.); City of Gilmer v. Moyer, 181 S.W.2d 1008 (Tex.Civ.App., Texarkana, 1944, n. w. h.). Our Supreme Court has said that: "An important essential in the acquisition of a prescriptive right is an adverse use of the easement. 'Generally, the hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. If the enjoyment is consistent with the right of the owner of the tenement, it confers no right in opposition to such ownership.' * * *" Othen v. Rosier, supra.

■■■ Easement by prescription does not begin to run until the party against whom the prescription right is claimed has notice. Martin v. Burr, 111 Tex. 57, 228 S.W. 543, 546 (1921). The record reveals that the original and continued use of the road by others was by permission of the appellee. The permissive use of the roadway over the land of another contemporaneously with the owner's use of the same roadway is not adverse.

■■■ To establish an easement by prescription over the land of another, it must be shown that the use was open, notorious, hostile, adverse, uninterrupted, exclusive and continuous for a period of more than ten years. A failure to prove any one of the essential elements is fatal. Mere use alone will not create an easement. Moreover, the use of the way is permissive and not adverse, as a matter of law, if the way is also used by the owner of. the land, along with the adverse user. O'Connor v. Gragg, supra; Othen v. Rosier, supra; Rust v. Engledow, 368 S.W.2d 635 (Tex.Civ.App., 1963, Waco, writ ref., n. r. e.) and cases cited therein.

Since the undisputed testimony shows that the appellants' predecessor in title used the road in question with the permission and consent of the appellee up until his conveyance of the property to the appellants in 1963, there has been no use of the roadway for ten years in a hostile and adverse manner. Further, under the authorities cited, since appellee was also using the roadway, such use as appellants and their predecessor in title made of the way is permissive and not adverse, as a matter of law. The use of the roadway under the circumstances reflected by this record has not ripened into a prescriptive right.

We next consider appellants' contention that said road has become a public road by implied dedication.

■■ In order to constitute dedication by estoppel or implication, there must exist a clear and unequivocal intention on the part of the landowner to dedicate the same to public use and an acceptance thereof by the public. Greenway Parks Home Owners Association v. City of Dallas, 159 Tex. 46, 312 S.W.2d 235, 316 S.W.2d 74 (1958); City

of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601; International & G. N. R. Co. v. Cuneo, 47 Tex.Civ.App. 622, 108 S.W. 714 (1908, writ ref.); Maddox v. Maxwell, 369 S.W.2d 343 (Tex.Sup., 1963); City of Plano v. Reed, 392 S.W.2d 197 (Tex.Civ. App., Tyler, 1965, writ ref., n. r. e.); Owens v. Hockett, 151 Tex. 503, 251 S.W. 2d 957 (1952).

It has been held by the Supreme Court of this state in City of Houston v. Scanlan, 120 Tex. 264, 37 S.W.2d 718, 720, that:

"The vital principle, as seen from the authorities, upon which the doctrine of dedication rests, is the intention of the owner to dedicate. This intention may be implied from the owner's acts, coupled with the intention with which he did the acts. * * *

"But the intention to dedicate must be shown or be inferable, by sufficient evidence, from the owner's acts. * * *"

■ The intention to dedicate must be shown by something more than an omission or failure to act or acquiescence on the part of the owner. Worthington v. Wade, 82 Tex. 26, 17 S.W. 520; Gulf, C. & S. F. Ry. Co. v. Montgomery, 85 Tex. 64, 67, 19 S.W. 1015; International & G. N. R. Co. v. Cuneo, supra; Maddox v. Maxwell, supra. Without an intention to dedicate, there can be no dedication.

■ To constitute a dedication there must be an intention on the part of the property owner to appropriate the property affected to a public use. This intention may be manifested by express declaration of the property owner, or by his acts and conduct with reference to such property from which the existence of such intention may be fairly implied. Mere use of the property by the public, without a manifested intention on the part of the property owner to surrender to the public the dominion over the property, so far as such use may be concerned, is insufficient to establish a dedication to public use. Ladies' Benev. Soc. of Beau-

mont v. Magnolia Cemetery Co., supra. It has been held in Hestand v. Johnson County, 206 S.W.2d 665, 668 (Tex.Civ.App., Waco, 1947, n. w. h.) that: "In some instances dedication can be presumed, but such presumption cannot prevail without evidence of some facts or circumstances clearly warranting such presumption, and the same must be established by some act and declaration of the owner of such public and deliberate character as to make it generally known and not of doubtful intention. As a rule, presumption does not exist from mere proof of public user alone, but, * * * there must be evidence of some act or declaration or a course of conduct on the part of the alleged dedicator indicating an actual intent to dedicate his land to the public. * * *" The evidence concerning the county's use of its equipment and men to perform work on the road is not sufficient to show that the appellee agreed to it or consented to it with the intent to dedicate said road to the public. Hestand v. Johnson County, supra.

The road in question terminates on the appellants' property. The evidence shows that the road was used by others along with appellee. The use of the road, as testified to by the witnesses called by appellants, was in almost exery instance for the purpose of furthering the business of the appellants and their predecessors in title. The use of a way over the land of another when the owner is also using the same is not such adverse possession as will serve as notice of a claim of right, for the reason that the same is not inconsistent with a license from the owner. Othen v. Rosier, supra; Callan v. Walters, 190 S.W. 829, 832 (Tex.Civ.App., Austin, 1916, n. w. h.).

The record before us fails to reveal any evidence of any declaration or act on the part of appellee that would imply that it intended to dedicate to the public, irrevocably, the road in question.

■ Moreover, as above stated, this case was tried to the court without the aid of a jury. No findings of fact or conclu-

sions of law appear in the record, so all disputed questions of fact must be resolved in support of the trial court's judgment. For appellants to prevail, they must show dedication to the public or title as a matter of law, which the evidence in this case fails to so show. Greenway Parks Home Owners Association v. City of Dallas, supra; City of Plano v. Reed, supra.

 The evidence is not clear as to the extent of the change of the road made in 1958. In view of the likelihood of a trial on appellants' petition for a permanent injunction, we point to the rule of law in this state that says: "To establish a private right of way by prescription, the line of travel must be definite; any material deviation or variance for the requisite period does not establish a prescription right, but a slight divergence would not defeat such right, * * *." Murff v. Dreeben, 127 S.W.2d 577, 581 (Tex.Civ.App., Dallas, 1939, dism. judg. cor.).

Judgment of the trial court is affirmed.